UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES FIRE
INSURANCE COMPANY

Plaintiff, Case No.:

v.

PAUL L KENNEDY
ENTERPRISES, INC., KENNEDY
SIGNATURE CONSTRUCTION,
INC., PAUL KENNEDY,
individually, and JENA
KENNEDY, individually

Defendants.
_________________________________/

**COMPLAINT**

Plaintiff, United States Fire Insurance Company ("US Fire"), through counsel, sues Defendants, Paul L Kennedy Enterprises, Inc. ("PKE"), Kennedy Signature Construction, Inc. ("KSC"), Paul Kennedy, and Jena Kennedy (PKE, KSC, Paul Kennedy, and Jena Kennedy may sometimes be referred to collectively in this Complaint as the "Indemnitors"), and alleges:

**PARTIES, JURISDICTION, AND VENUE**

1. US Fire is a Delaware corporation with its principal place of business in Morristown, New Jersey thus making it a citizen of Delaware and New Jersey. US Fire is authorized to conduct business in Florida.

2. PKE is a Kentucky corporation with its principal place of business in Nicholasville, Kentucky, thus making it a citizen of Kentucky.

3. KSC is a Kentucky corporation with its principal place of business in Nicholasville, Kentucky, thus making it a citizen of Kentucky.

4. Paul Kennedy, upon information and belief, is a resident and citizen of Nicholasville, Kentucky.

5. Jena Kennedy upon information and belief, is a resident and citizen of Nicholasville, Kentucky.

6. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §1332 because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and because complete diversity exists between US Fire and all defendants.

7. Venue is appropriate in this Court because the General Collateral and Indemnity Agreement governing the dispute provides that the defendants will submit to jurisdiction in any state where a claimant brings suit against US Fire on a Bond covered by the General Collateral and Indemnity Agreement. Here, the obligee on the bond at issue in this litigation has filed an Arbitration Demand with a hearing locale of Naples, Collier County, Florida within the confines of the Middle District of Florida, Ft. Myers Division.

## GENERAL ALLEGATIONS

8. US Fire is, among other things, a surety company that issues payment and performance bonds and stands as surety for selected contractors.

9. At all pertinent times, PKE acted as a construction contractor on commercial projects. In connection with its work, PKE from time to time required surety payment bonds and performance bonds. The Indemnitors induced US Fire to issue certain payment and performance bonds on behalf of PKE by entering into an indemnity agreement with US Fire.

## THE INDEMNITY AGREEMENT

10. As a condition of issuing bonds on behalf of any of the Indemnitors, US Fire required the Indemnitors to enter into an indemnity agreement with it.

11. Specifically, on August 1, 2022, the Indemnitors each executed a General Collateral & Indemnity Agreement ("GIA") in favor of US Fire. A true and correct copy of the GIA is attached and incorporated into this Complaint as **Exhibit "A."**

12. The GIA applies to any Bond requested from or issued by US Fire at the request of any of the Indemnitors.

13. According to the GIA, the Indemnitors agreed, in part:

> 5. Indemnification and Hold Harmless. The Indemnitors hereby jointly and severally covenant, promise and agree to exonerate, defend, indemnify, keep indemnified and hold harmless Company from and against any and all Loss, irrespective of whether Company has made any payment under any of its Bonds or whether the Indemnitors may have assumed, or offered to assume, the defense of Company upon any claim. Company shall be entitled to immediate reimbursement for any and all Loss incurred by it in good faith

and under the belief that it was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such payments, whether or not such liability, necessity or expediency existed. An itemized, sworn statement of Loss by an employee of Company, or other evidence of payment, shall be *prima facie* evidence of the propriety, amount and existence of Indemnitors' liability to Company, and of the Company's good faith in making the payment(s). "Good Faith," as used in this paragraph and elsewhere in this Agreement, shall mean honesty in fact and the absence of willful misfeasance or malfeasance. Neither negligence nor gross negligence shall be deemed the absence of good faith. Indemnitors shall pay to Company interest on all disbursements made by Company at the maximum rate permitted by law, calculated from the date of each such disbursement.

[GIA, ¶ 5]

14. The Indemnitors further agreed that:

6. Settlement of Claims. Company shall have the right to adjust, settle or compromise any Claim unless the Indemnitors: (i) request, in writing, Company to litigate, defend, or appeal such Claim; (ii) demonstrate to the Company's satisfaction that there is a valid basis to dispute such Claim; and (ii) deposit with Company, at the time of such request, cash or collateral satisfactory to Company in kind and amount, to be used in paying any judgment or judgments rendered or that may be rendered, with interest, costs, expenses and attorneys' fees, including those of Company, and to the extent that such litigation, defense, or appeal is not otherwise prohibited by law. Company's decision to adjust, settle or compromise any Claim shall be final and binding upon the Indemnitors. Company shall at all times have the right, but not the obligation, to retain the counsel and experts of its choice to defend itself from any Claim or to prosecute an action to preserve Company's rights with respect to collateral security, Contract funds, trust funds, liens on any bonded project or this Agreement, and the cost of retaining such counsel and experts shall fall within the Indemnitors' obligation to indemnify, exonerate and hold Company harmless.

[GIA, ¶ 6]

15. Finally, the Indemnitors agreed:

7. Discharge and Collateral Security. The Indemnitors agree that any and all bonds issued by the Company shall be secured by collateral. In lieu of requiring collateral upon the issuance of any Bonds, however, the Indemnitors agree to post collateral upon demand by Company. The

> Indemnitors hereby stipulate to the material nature of the Company's prejudgment remedies. Accordingly, the Indemnitors will, upon written request of Company, promptly procure the full and complete discharge of Company from any and all Bonds specified in such request and all potential liability by reason of such Bonds. If such full and complete discharge is unattainable, the Indemnitors shall, if requested by Company, within five (5) business days, or such time as is otherwise agreed between the Company and the Indemnitors, deposit with Company a sum of money, as collateral security, in an amount Company, in its sole and absolute discretion, deems necessary at the time of said demand to protect Company from actual or anticipated Loss. Demand may be made as soon as: (i) the assertion of any Claim against Company; or (ii) Company determines that liability exists under any Bond; or (iii) Company has a reasonable basis to believe that it may incur or sustain liability or Loss; or (iv) any diversion of funds relating to any Contract by any Indemnitor in violation of this Agreement or applicable law; or (v) Company deems itself insecure, whether or not Company has made any payment or established any reserve and whether or not it has received notice of, accepted or denied any Claim in whole or in part. Company shall be entitled to apply any collateral security held by it under this Agreement or any collateral security agreement between it and any of the Indemnitors to the satisfaction of or in reimbursement of Company as a result of its satisfaction of any Claim, and to the direct payment of or reimbursement to itself of any Loss. The Indemnitors agree that such collateral security may be used, without limitation to the above or otherwise, to pay for any fees or costs incurred by the Company in the defense or prosecution of any claim between the Company and the Indemnitors regarding this Agreement, including any claim for a return or reduction of the collateral security, or any Bond. Company shall have no duty to invest, or provide interest on, any collateral security deposited by the Indemnitors. The Indemnitors acknowledge and agree that their failure to immediately deposit with Company any sums demanded under this section shall cause irreparable harm to Company for which it has no adequate remedy at law. Indemnitors agree and shall stipulate in any legal proceeding that Company is entitled to injunctive relief for specific performance of said collateral deposit obligation and do hereby expressly waive and relinquish any claims or defenses to the contrary. Indemnitors further agree that any order enforcing this provision of this Agreement shall operate as a judgment, lien and encumbrance on any Property owned by the Indemnitors.

[GIA, ¶7]

## THE PROJECT AND THE BOND

16. PKE entered into a Subcontract with Cleveland Construction, Inc. ("CCI") to perform certain work as set forth in in the Subcontract on a project known as the Residence Inn Plainfield (the "Project"), where CCI was acting as the general contractor. PKE was required to provide a performance bond and payment bond in connection with the Subcontract.

17. In reliance on the terms of the GIA and at the request of PKE, US Fire a Performance Bond and Payment Bond (the "Bond") naming PKE as principal and CCI as obligee in connection with the Subcontract in the penal sum of $1,513,715.00. A copy of the Bond is attached as **Exhibit "B."**

18. Disputes arose regarding PKE's work on the Project, and on or about August 7, 2023, CCI terminated PKE from the Project. CCI thereafter asserted a claim on the Bond (the "Claim").

19. CCI also demanded arbitration (the "Arbitration") against US Fire and PKE on July 2, 2024, demanding damages in the principal amount of $1,617,715.00 against US Fire.[1] A copy of the Arbitration Demand is attached as **Exhibit "C."**

20. On July 24, 2024, US Fire, through counsel, demanded that the Indemnitors post collateral in the amount of $1,617,715.00 pursuant to the terms of the GIA. A copy of the July 24 letter is attached as **Exhibit "D."**

[1] CCI seeks damages totaling $2,793,400.94, however, it seeks $1,617,715.00 against US Fire, the amount that it alleges that the penal sum of the Bond was increased by change orders, plus interest, costs and attorneys' fees.

21. The Indemnitors refused and/or failed to post collateral.

22. Despite US Fire's demand, the Indemnitors have failed and refused to comply with US Fire's collateral demand and US Fire faces significant attorneys' fees and costs, and potential loss resulting from the Arbitration.

23. US Fire fears it will suffer losses and incur expenses as a result of the Claim and the Arbitration.

24. The GIA is clear and unequivocal in setting forth the Indemnitors' obligations to "exonerate, defend, indemnify, keep indemnified and hold harmless [US Fire] from and against any and all Loss.." [GIA, ¶ 5]. This Loss includes counsel fees and outside consulting fees that arise as a result of [US Fire] fulfilling its obligations under any Bond. [GIA, ¶ 2].

25. US Fire has agreed to pay the undersigned attorneys a reasonable fee in consideration for their services rendered representing US Fire in this action.

26. All conditions precedent to maintaining this action have occurred, been excused, or otherwise been waived.

**COUNT I**
**(Contractual Indemnity)**

27. US Fire realleges and incorporates paragraphs 1 through 26 as if fully set forth herein.

28. This is an action for damages for the Indemnitors' breach of the GIA.

29. On or about August 1, 2022, US Fire and the Indemnitors entered into the GIA.

30. The Indemnitors are in default of, and have breached, the GIA by:

a. failing to deposit cash or collateral satisfactory to [US Fire] in kind and amount, to be used in paying any judgment or judgments rendered or that may be rendered;

b. failing to promptly indemnify US Fire from all Loss upon demand, including loss arising from attorneys' fees and consultants' fees; and

c. failing to perform and comply with the terms, covenants, and obligations of the GIA.

31. As a result of the Indemnitors' various breaches of the GIA, US Fire has suffered and will continue to suffer damages by reason of having issued the Bond. These damages include, but are not limited to, attorneys' fees, consultants' fees, and other costs and expenses related to the Arbitration and any amounts that US Fire may pay or be required to pay to CCI by settlement, judgment or award.

32. Despite demand, the Indemnitors have failed and refused to indemnify US Fire for any loss or to provide collateral.

33. US Fire is entitled to an award of its attorneys' fees and costs in pursuing this action under the terms of the GIA.

WHEREFORE, US Fire requests that this Court enter judgment against the Indemnitors, jointly and severally, for damages, attorneys' fees, consultants' fees, prejudgment interest, costs, and such further relief as this Court deems just and proper.

**COUNT II**
**(Specific Performance)**

34. US Fire realleges and incorporates paragraphs 1 through 26 as if fully set forth herein.

35. US Fire has suffered, and will continue to suffer, various kinds and natures of liability, loss, and expenses as a result of executing the Bond, and due to the Indemnitors' failure to honor their obligations under the GIA.

36. In addition to the damages US Fire has suffered or is suffering, US Fire may be responsible and liable for additional losses and expenses as a result of the Claim and the Arbitration.

37. Pursuant to the GIA, the Indemnitors agreed that "if requested by [US Fire], [the Indemnitors shall].. deposit with [US Fire] a sum of money, as collateral security, in an amount [US Fire], in its sole and absolute discretion, deems necessary at the time of said demand to protect [US Fire] from actual or anticipated Loss." [GIA, ¶ 7]

38. The Indemnitors acknowledge and agree that their failure to immediately deposit with [US Fire] the sum demanded will cause irreparable harm to [US Fire] for which it has no adequate remedy at law. [GIA, ¶ 7]

39. As a result of the Claim and the ensuing Arbitration, US Fire has incurred attorneys' fees, consultants' fees and expenses, and faces substantial exposure to additional losses.

40. The Indemnitors have failed and/or refused to perform their contractual obligation to collateralize US Fire.

41. US Fire issued the Bonds at the Indemnitors' request in consideration of the Indemnitors' promise to comply with the terms of the GIA.

42. US Fire has no adequate remedy at law to enforce its rights.

43. The GIA is just and reasonable and supported by adequate consideration.

44. The GIA is clear and certain as to the Indemnitors' obligations and US Fire's rights.

45. The terms of the GIA are sufficiently clear to allow enforcement by this Court.

46. The performance US Fire seeks is substantially identical to that promised in the GIA and US Fire is entitled to specific performance of the GIA.

WHEREFORE, US Fire requests that this Court enter a decree and immediate order of specific performance compelling the Indemnitors, jointly and severally, to:

a. deposit with US Fire the sum of $1,617,715.00 in cash collateral to apply to past and future attorneys' fees, consultants' fees, costs and losses in connection with the Claim, the Arbitration or the Bond and for which the Indemnitors would be obligated to indemnify US Fire under the GIA;

b. honor all obligations contained in the GIA;

c. exonerate, indemnify, and keep indemnified US Fire, according to the terms of the GAI, for all liability asserted against US Fire by reason of having executed the Bond, whether or not US Fire has made any payment therefor;

d. preventing the Indemnitors from diverting or disbursing any funds relating to the Bonds or Projects without US Fire's express and written approval;

e. compelling the Indemnitors to post a bond or suitable collateral to secure US Fire against any alleged liability, losses, or expenses as set forth in the GAI;

f. attaching or freezing the Indemnitors' assets, in an amount equal to US Fire's stated demands against them until payment is made to US Fire as required by the GAI;

g. requiring the Indemnitors to render to US Fire a full and complete accounting of all assets owned by them or in which they have an interest;

h. requiring the Indemnitors to allow US Fire full and complete access to all financial books, records and accounts maintained by or for the Indemnitors;

i. permanently enjoining and restraining the Indemnitors from selling, transferring, disposing of, or liening any assets or property, and further enjoining and restraining the Indemnitors from allowing any assets or property to be liened, until US Fire is fully paid;

j. granting a lien upon all assets and property, including realty, personally, and mixed, in which the Indemnitors have any interest. US Fire further requests that such lien(s) shall secure US Fire against any loss it may sustain or incur by virtue of it having executed the Bonds. US Fire further requests that such lien(s) remain in effect unless and until the Indemnitors have fully paid US Fire; and

k. honor all other agreements and obligations contained in the GAI, including payment of its attorneys' fees and costs incurred in pursuing this claim.

l. granting such further relief as this Court deems just and proper.

Dated: April 9, 2025

PASKERT DIVERS THOMPSON

/s/ *Alberta L. Adams*
ALBERTA L. ADAMS
Fla. Bar No. 80063
Email: aadams@pdtlegal.com
JOHN R. DAVENPORT, JR.
Fla. Bar. No. 1059146
Email: jdavenport@pdtlegal.com
100 North Tampa Street, Suite3700
Tampa, Florida 33602
Telephone: (813) 229-3500
Facsimile: (813) 229-3500
*Attorneys for United States Fire Insurance Company*